**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| STATE OF DELAWARE | ) | |
|---|---|---|
| | ) | |
| v. | ) | I.D. No. 1508008524 |
| | ) | |
| | ) | |
| MIGUEL RIVERA, | ) | |
| | ) | |
| Defendant. | ) | |

Date Submitted: June 29, 2016
Date Decided: August 16, 2016

***Upon Defendant's Motion for Judgment of Acquittal***
**DENIED**

## I.    PROCEDURAL HISTORY

1.    Defendant Miguel Rivera was arrested on August 11, 2015, and charged with Aggravated Possession of Cocaine;[1] Drug Dealing Cocaine;[2] and Possession of Drug Paraphernalia.[3]

2.    Defendant was assigned counsel to represent him.

3.    The case was presented to a jury on May 10 and 11, 2016.  The jury found the Defendant guilty of all three charges.

4.    Defendant filed a timely motion for judgment of acquittal pursuant to Super. Ct. Crim. R. 29 on the grounds that there was insufficient evidence to

---

[1] 16 *Del. C.* § 4752(3).
[2] 16 *Del. C.* § 4752(1).
[3] 16 *Del. C.* § 4771.

support a conviction of Aggravated Possession and Drug Dealing, and that there was a violation of *corpus delicti*.  The State opposes Defendant's motion.

## II.    LEGAL STANDARDS

1.    The standard of review for a motion for judgment of acquittal is whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find a defendant guilty beyond a reasonable doubt of all the elements of the crime.[4]  There is no distinction between direct and circumstantial evidence in making this determination.[5]

2.    The Supreme Court reviews "objections to the sufficiency of the evidence establishing *corpus delicti* under the same standard as a challenge to the sufficiency of the evidence."[6] The Supreme Court has "never precisely defined the specific quantum of independent evidence required by the State to establish the *corpus delicti*."[7] However, "the defendant is sufficiently protected by requiring proof of the *corpus delicti* beyond a reasonable doubt upon all evidence taken together[.]"[8]  Moreover, the prosecution must introduce "some evidence of the existence of a crime, independent of the defendant's confession, to support a

---

[4] *Cline v. State*, 720 A.2d 891, 892 (Del. 1998) (*citing Davis v. State*, 706 A.2d 523, 524 (Del. 1998); *Monroe v. State*, 652 A.2d 560, 563 (Del. 1995)).
[5] *Forrest v. State*, 721 A.2d 1271, 1279 (Del. 1999); *Cline*, 720 A.2d at 892 (*citing Davis*, 706 A.2d at 524; *Hoey v. State*, 689 A.2d 1177, 1181 (Del. 1997); *Skinner v. State*, 575 A.2d 1108, 1121 (Del. 1990)).
[6] *Wright v. State*, 953 A.2d 188, 193 (Del. 2008).
[7] *Id.* (*quoting Bailey v. State*, 2007 WL 1041748, at *3 (Del. Apr. 9, 2007)).
[8] *Id.*

conviction."[9]  The purpose of the *corpus delicti* rule is to "prevent individuals from being convicted for a crime by confession when there is no other evidence that a crime has been committed."[10]

3.     Constructive possession exists where the defendant (1) knew the location of the drugs; (2) had the ability to exercise dominion; and (3) had the intention to guide their destiny.[11]  Where drugs are found in a car, the presumption of dominion or control is no heavier on the car's custodian than on the car's passenger.[12]  Mere proximity or awareness of drugs is insufficient to establish constructive possession.[13]  However, if the defendant is found "near the drugs, this may establish a *prima facie* case of constructive possession if there also is evidence linking the accused to an ongoing criminal operation of which possession is a part."[14]

---

[9] *Shipley v. State*, 570 A.2d 1159, 1168 (Del. 1990).

[10] *Id.* at 1168-69 (*citing Bright v. State*, 490 A.2d 564, 569 (Del. 1985)).

[11] *Lecates v. State*, 987 A.2d 413, 426 (Del. 2009) (*citing White v. State*, 906 A.2d 82, 86 (Del. 2006)).

[12] *Id.* at 421-22 (abrogating *Holden v. State*, 305 A.2d 320 (Del. 1973)).  In *Holden*, the Supreme Court found that there was sufficient evidence to support a drug dealing conviction for the defendant, who was the driver of the car. 305 A.2d at 322.  However, the Court found that there was insufficient evidence to support a possession of drugs conviction for two of the car's passengers. *Id.* at 321-22.  The defendant was deemed the custodian of the vehicle because he owned and operated the car at the time of the stop. *Id.* at 321.  One of the passengers was seated in the backseat of the vehicle, and the other was in the front passenger seat. *Id.* at 321.  The police found a plastic bag containing uncut heroin (25.5 grams) on the back seat of the car, and $1,153 on the defendant. *Id.*  Small scales were also found in the driver's seat. *Id.*  All three occupants testified that they were in New York for the day; none of them were users; and none of them knew anything about the drugs. *Id.*

[13] *White v. State*, 906 A.2d 82, 86-87 (Del. 2006).

[14] *McNulty v. State*, 655 A.2d 1214, 1217 (Del. 1995).

3

4. Both direct and indirect evidence may be relied upon to support a conviction, as long as all evidence taken together establishes guilt beyond a reasonable doubt.[15]

## III. DIRECT EVIDENCE SUPPORTING CONVICTION

1. On August 11, 2015 at about 1:20 p.m., a concerned citizen contacted Detective Justin Wilkers of the Wilmington Police Department ("WPD") regarding a Hispanic male in his 40s conducting hand-to-hand drug sales out of a gold sedan on West 4th and North Franklin Streets in Wilmington. According to the caller, the male was wearing a white T-shirt, blue jeans, orange and purple sneakers, and large sunglasses. Det. Wilkers relayed this information to Corporal Riemann and Officer Dmeza of WPD.

2. Cpl. Riemann and Officer Dmeza went to the area of West 4th and North Franklin Street and saw Defendant. Defendant matched the description that was relayed to the officers by Det. Wilkers. The Defendant was standing five to seven feet away from a gold sedan. The gold sedan was occupied by a Hispanic female, who was later idenfied as Noemi Meendez. Melendez got out of the vehicle and walked away. The officers conducted a stop on Defendant.

---

[15] *Hoey*, 689 A.2d at 1181 (*citing Skinner*, 575 A.2d at 1121).

3. Defendant gave the officers consent to search his person. The officers did not find anything. However, a DELJIS search revealed that Defendant had three outstanding warrants, including capias for a violation of probation.

4. Melendez's husband, Jamie Beltran, appeared during the encounter. Beltran informed the officers that he owned the gold sedan. Beltran explained that, even though Melendez was standing on the corner of West 4th and North Harrison Streets, Melendez wanted Beltran to get the car. Melendez did not have any interaction with the police, and was not questioned.

5. Beltran consented to a search of the gold sedan. The officers found the following items:

   a. Multiple clear cellophane bags inside a plastic grocery bag underneath the passenger side front seat. The cellophane bags contained a white rocky substance that field tested positive for cocaine;

   b. A digital scale in the passenger side door compartment; and

   c. Documents that belonged to Defendant in the trunk of the vehicle, including a Department of Corrections I.D. card with Defendant's picture and information.

6. The officers allowed Beltran to take his car. Beltran was not charged or arrested.

7. Defendant was arrested for Drug Dealing.

5

8. Defendant agreed to speak with police. Defendant waived his *Miranda* rights verbally and by signing a written form. Det. Wilkers and Jose Cintron of WPD conducted an interview with Defendant. The interview was recorded by audio and video.

## IV. INDIRECT EVIDENCE SUPPORTING CONVICTION

1. During the interview, the exact phrasing of questions by police and answers by Defendant with respect to the charge of Drug Dealing were subject to interpretation.

2. Defendant admitted possession of the drugs and paraphernalia. Regarding the scale and cocaine, Defendant stated several times, "It's all mine."

3. Defendant also stated that he did not want to get Melendez in trouble, so he would take the blame. Defendant said, "I'll take responsibility for it. I don't want her getting in trouble."

4. However, there was no clear admission regarding the sale of drugs. Defendant was asked what he does for a living and replied, "I'm a finisher." Defendant was next asked, "So you're just making a little money on the side?" Defendant answered, "Yes."

5. The State argued to the jury that the jury could infer that Defendant admitted to selling drugs in order to make extra money.

6

6. Defense counsel argued that Defendant did not admit to selling drugs to make extra money, but only conceded that he made money as a "finisher."

## V. CONCLUSION

1. Based on the entire record, including all direct and circumstantial evidence and references there from, a rational trier of fact viewing the evidence in the light most favorable to the State could find Defendant guilty beyond a reasonable doubt of all the elements of each crime charged.

2. The State presented evidence that was independent of Defendant's admission.

3. The evidence presented in the State's case-in-chief was sufficient to support Defendant's convictions.

**NOW, THEREFORE, THIS 16th day of August, 2016, Defendant's Motion for Judgment of Acquittal is hereby DENIED.**

**IT IS SO ORDERED.**

*Andrea L. Rocanelli*

_____
**The Honorable Andrea L. Rocanelli**