# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | | |
|---|---|---|---|
| STATE OF DELAWARE, | ) | | |
| | ) | | |
| | ) | | |
| | ) | | |
| v. | ) | I.D. No. | 1212003086A |
| | ) | | |
| | ) | | |
| DEWAYNE MCNAIR, | ) | | |
| | ) | | |
| Defendant. | ) | | |

## ORDER

Submitted: May 18, 2020[1]
Decided: August 7, 2020[2]

*Upon Consideration of the Commissioner's Report and Recommendation on Defendant's Motion for Postconviction Relief,*
**ADOPTED.**

*Upon Consideration of Defendant's Appeal from the Commissioner's Report and Recommendation on Defendant's Motion for Postconviction Relief,*
**DENIED.**

John S. Taylor, Deputy Attorney General, Department of Justice, Wilmington, Delaware. *Attorney for the State.*

Christopher S. Koyste, Esquire of Law Office of Christopher Koyste, LLC, Wilmington, Delaware. *Attorney for Defendant.*

## MEDINILLA, J.

---

[1] The Court reviews Defendant's submission of May 18, 2020 as a supplement to his Motion for Postconviction Relief, where he asks this Court "look at [his] entire case, from the police affidavit to the end of trial[,]" requesting to be "released[.]" Defendant's Motion for Modification of Sentence, *State of Delaware v. DeWayne McNair*, ID No. 1212003086A, D.I. 89 (Del. Super. Ct. May 18, 2020) [hereinafter the Court will refer to docket numbers].

[2] The judicial emergency declaration due to the COVID-19 pandemic, "[was] extended for another 30 days effective July 8, 2020 . . . ." *See* ADMINISTRATIVE ORDER NO. 8 EXTENSION OF JUDICIAL EMERGENCY (Del. July 6, 2020).

1

**AND NOW TO WIT**, this 7th day of August, 2020, upon consideration of Defendant, DeWayne McNair's ("Defendant") Motion for Postconviction Relief, the Commissioner's Report and Recommendation, Defendant's Appeal from the Commissioner's Report, the State's Response to Defendant's Appeal, Defendant's Supplemental Filing in Closing, the sentence imposed upon Defendant, and the record in this case, it appears to the Court that:

## I.   FACTUAL AND PROCEDURAL BACKGROUND[3]

1.     Defendant is a declared habitual criminal offender. In the criminal justice system since 1998, he has a violent criminal history that primarily involves drugs and firearms.[4] Two separate juries heard evidence that forms the bases of this Motion.

2.     The evidence established that on December 5, 2012, Defendant was driving a rental car when he was stopped by Wilmington Police at 8th and Spruce Street in Wilmington. He was the only occupant in the car. Officers took him into custody and his vehicle was driven back to the Wilmington Police Department. During an administrative search, police discovered a loaded semi-automatic

---

[3] This Court's recitation is based on the Defendant's Sentencing Transcript, all of Defendant's pleadings as they relate to his Amended Motion for Postconviction Relief, the State's corresponding responses, the Evidentiary Hearing Transcript, the Commissioner's Report and Recommendation, Defendant's Appeal, and the State's Response thereto.

[4] Defendant's prior convictions included Possession with Intent to Deliver Heroin (1998), Robbery First Degree (2001), Possession of a Firearm During Commission of a Felony (2001), Assault Second Degree (2001), Possession with Intent to Deliver Heroin (2008), CCDW (1998), and CCDW (1999).

handgun and a men's jacket containing Defendant's identification card under the front passenger seat. When questioned, Defendant stated he had cocaine and removed a clear sandwich bag containing suspected crack cocaine and $231 in cash. He told the police that he had just stolen the drugs from an alleyway. It was determined he was in possession of approximately 6 grams of cocaine, 5.38 grams found in a clear-knotted plastic sandwich bag on his waistband and .82 grams contained in seven smaller Ziploc baggies, commonly referred to as "dime bags" intended for sale.

3. On January 22, 2013, Defendant was indicted on the charges of Drug Dealing, Possession of a Firearm During the Commission of a Felony ("PFDCF"), Possession of a Deadly Weapon by a Person Prohibited ("PDWBPP"), Carrying a Concealed Deadly Weapon ("CCDW"), and Driving without a Valid License.[5] The PDWBPP charge was severed from the other charges for trial.[6]

4. On November 22, 2013, following a three-day Superior Court jury trial, a jury returned guilty verdicts for Drug Dealing and PFDCF.[7] Defendant was acquitted on the CCDW charge. On January 8, 2014, a separate jury found Defendant not guilty of the PDWBPP charge.

---

[5] Indictment, True Bill Filed, D.I. 2.
[6] Defendant's Motion for Relief from Prejudicial Joinder, D.I. 16. On November 19, 2013, the State entered a *nolle prosequi* for the charge of Driving without a Valid License.
[7] Jury Trial Held, D.I. 22.

3

5. On May 13, 2014, Defendant filed a Motion for New Trial arguing violations of *Brady* and misconduct at the Office of the Chief Medical Examiner ("OCME") as it relates to chain of custody.[8] Although his motion was denied,[9] the Court ordered the drugs be re-tested. The drugs re-tested positive for cocaine.

6. On November 18, 2016, the State's moved to declare Defendant a habitual offender[10] and Defendant was sentenced as such. The State had filed a previous Motion to Declare Defendant a Habitual Offender under § 4214(b),[11] where Defendant faced a mandatory minimum sentence of life imprisonment. Because of changes in the law eliminating the provisions of § 4214(b), the State refiled to have Defendant sentenced as a habitual offender requesting habitual offender status only as to the firearm charge, which subjected Defendant to a minimum mandatory sentence of twenty-five years.[12] The Court followed the recommendation of this minimum mandatory sentence and imposed a total of thirty-five years at Level V, suspended after twenty-five years, for transitioning levels of probation.[13]

---

[8] Defendant's Motion for New Trial, D.I. 27. J. Carpenter denied Defendant's motion, but ordered for a retesting of the drugs at issue in Defendant's case, that were returned yielding positive tests.
[9] Order Denying Defendant's Motion for New Trial, D.I. 46.
[10] State's Motion to Declare Defendant an Habitual Offender, D.I. 50; Order Granting State's Motion to Declare Defendant a Habitual Offender, D.I. 50.
[11] *See* Transcript of Sentencing – November 18, 2016, D.I. 53; *see also* 11 *Del. C.* § 4214.
[12] *See* Transcript of Sentencing – November 18, 2016, D.I. 53.
[13] Sentence Order, D.I. 51. Defendant received an additional two-year probation sentence for Drug Dealing.

7.     On December 7, 2016, Defendant filed a notice of appeal. On October 20, 2017, the judgment of the Superior Court was affirmed.[14]

8.     On December 8, 2017, Defendant timely filed *pro se* motions for Postconviction Relief and for the Appointment of Counsel.[15] Defendant's Motion for Appointment of Counsel was granted.[16] On August 7, 2018, through assistance of counsel, Defendant filed an Amended Motion for Postconviction Relief.[17] On November 16, 2018, the State filed its Response.[18] On December 21, 2018, Defendant filed a Reply.[19]

9.     The Court referred Defendant's Amended Motion for Postconviction Relief to a Superior Court Commissioner for proposed findings of fact and conclusions of law under Delaware Superior Court Criminal Rule 62 (a)(5).[20] On May 7, 2019, Commissioner Parker held an evidentiary hearing and heard testimony from trial and appellate counsel.

---

[14] Mandate filed from Supreme Court: Superior Court Judgment Affirmed, D.I. 62.

[15] Defendant's Motion for Postconviction Relief, D.I. 63; Defendant's Motion for Appointment of Counsel, D.I. 64.

[16] Letter Granting Defendant's Motion for Appointment of Counsel, D.I. 67.

[17] Amended Motion for Postconviction Relief, D.I. 69 [hereinafter "Def.'s Mot."].

[18] State's Response to Defendant's Amended Motion for Postconviction Relief, D.I. 77.

[19] Defendant's Response to the State's Response, D.I. 78.

[20] *See* 10 *Del. C.* § 512(b)(1)(b) (2013 & Supp. 2016); DEL. SUPER. CT. CRIM. R. 62(a)(5) (Under Delaware Superior Court Rule 62(a)(5), the Court may refer to a Superior Court Commissioner case-dispositive motions, including postconviction relief motions, and the Commissioner must submit "proposed findings of fact and recommendations for the disposition, by a judge, of any such matter.").

10. On October 29, 2019, the Commissioner filed a report recommending that Defendant's Amended Motion for Postconviction Relief should be denied ("Commissioner's Report").[21]

11. After the Commissioner issues a report, "any party may serve and file written objections" to the report within ten days.[22] On November 12, 2019, Defendant filed a timely appeal.[23] On March 21, 2020, the State filed a response to Defendant's appeal.[24] On May 18, 2020, Defendant submitted an additional letter reiterating prior arguments raised in his Rule 61 motion that the Court accepted as a supplement.[25]

## II. STANDARD OF REVIEW

12. Under Rule 62(a)(5), the Commissioner, to which the Court referred the motion, is permitted to conduct hearings and "submit to a judge of the Court proposed findings of fact and recommendations for the disposition, by a judge," of any such motion.[26] The Court "may accept, reject or modify, in whole or in part, the findings of fact or recommendations made by the Commissioner."[27] Having

---

[21] Commissioner's Report and Recommendations and Order, D.I. 83 [hereinafter "Comm'r Report"].
[22] DEL. SUPER. CT. CRIM. R 62(a)(5)(ii).
[23] Defendant's Appeal from Commissioner's Finding of Fact, D.I. 84 [hereinafter "Def.'s Appeal"].
[24] State's Response to Defendant's Appeal, D.I. 88 [hereinafter "State's Resp."].
[25] Defendant's Motion for Modification of Sentence, D.I. 89.
[26] DEL. SUPER. CT. CRIM. R. 62(a)(5).
[27] DEL. SUPER. CT. CRIM. R 62(a)(5)(ii).

received timely objections to the Commissioner's recommendations, the Court now makes a *de novo* review of "those portions of the report" to which an objection is made.[28]

## III. DISCUSSION

13. Superior Court Criminal Rule 61 is the exclusive remedy for persons "in custody under a sentence of this court seeking to set aside the judgment of conviction . . . ."[29] This Court "must first consider the procedural requirements of Rule 61 before addressing any substantive issues."[30] The procedural "bars" of Rule 61 are: timeliness,[31] repetitiveness,[32] procedural default,[33] and former adjudication.[34]

14. Defendant's Rule 61 Motion constitutes a timely first motion for postconviction relief. Accordingly, his Motion is reviewed on the merits. Defendant

---

[28] DEL. SUPER. CT. CRIM. R 62(a)(5)(iv).

[29] DEL. SUPER. CT. CRIM. R. 61(a)(1). *See, e.g., Warnick v. State*, 158 A.3d 884, 2017 WL 1056130, at *1, n.5 (Del. Mar. 30, 2017) (TABLE) (citing *Miller v. State*, 157 A.3d 190, 2017 WL 747758 (Del. Feb. 24, 2017) (TABLE)) (denying Rule 35(a) motion attacking sufficiency of evidence in indictment to which defendant pleaded guilty; defendant's "challenge [of] his indictment is outside the scope of Rule 35(a)" and was limited to Rule 61).

[30] *Bradley v. State*, 135 A.3d 748, 756-57 (Del. 2016) (citing *Younger v. State*, 580 A.2d 552, 554 (Del. 1990)). *See* DEL. SUPER. CT. CRIM. R. 61(i) (setting forth Rule 61's procedural bars).

[31] DEL. SUPER. CT. CRIM. R. 61(i)(1). *See, e.g., Evick v. State*, 158 A.3d 878, 2017 WL 1020456, at *1 (Del. Mar. 15, 2017) (TABLE) (affirming denial of Rule 61 motion as untimely when filed more than two years after conviction became final).

[32] DEL. SUPER. CT. CRIM. R. 61(i)(2). *See, e.g., Walker v. State*, 154 A.3d 1167, 2017 WL 443724, at *1-2 (Del. Jan. 17, 2017) (TABLE) (denying defendant's third postconviction relief motion as repetitive; "Rule 61 provides a limited window for judicial review, especially upon a repetitive motion.").

[33] DEL. SUPER. CT. CRIM. R. 61(i)(3).

[34] DEL. SUPER. CT. CRIM. R. 61(i)(4).

raises three ineffective assistance of counsel claims alleging that: (1) trial counsel should have challenged the sufficiency of the evidence presented at trial by seeking a motion for judgment of acquittal; (2) trial counsel should have investigated and presented statements made in Defendant's TASC Report, and (3) appellate counsel should have moved for insufficiency of the evidence to sustain the conviction.

15. To succeed on his ineffective assistance of counsel claims as they relate to trial counsel, Defendant must demonstrate: (1) "that trial counsel's performance was objectively unreasonable and that the defendant was prejudiced as a result[;]"[35] and (2) that if counsel was deficient, that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[36] Mere allegations of ineffectiveness are not enough.[37] Defendant must make and substantiate concrete allegations that overcome the strong presumption that counsel's conduct fell within a wide range of professional assistance.[38] There is a strong presumption that a defense counsel's conduct constituted sound trial strategy.[39]

---

[35] *Sykes v. State*, 147 A.3d 201, 211 (Del. 2015) (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).
[36] *Strickland v. Washington*, 466 U.S. 668, 694 (1984).
[37] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).
[38] *See Salih v. State*, 2008 WL 4762323, at *1 (Del. 2008); *see also Albury v. State*, 551 A.2d 53, 59 (Del. 1988).
[39] *Strickland*, 466 U.S. at 694.

16.    As to appellate counsel, Defendant must demonstrate "that his counsel was objectively unreasonable in failing to find arguable issues on appeal – that is, that counsel unreasonably failed to discover nonfrivilous issues and to file a merits brief raising them."[40]    In challenging the competency of appellate counsel, Defendant must make a "showing that a particular nonfrivilous issue was clearly stronger than issues that counsel did present[.]"[41]

17.    Additionally, Defendant must also establish that that any allegedly deficient performances of counsel resulted in prejudice.[42]    As to both trial and appellate counsel, Defendant fails to make such showing.

## A. Insufficiency of the Evidence

18.    Defendant contends that had trial counsel moved for judgment of acquittal on the basis of insufficiency of the evidence as to the element of possession, such challenge would have been successful.  He reiterates his argument that the presence of the firearm in the vehicle at the time of arrest was circumstantial evidence and the mere proximity to the contraband in the vehicle was not enough to prove possession.[43]  This Court disagrees.

---

[40] *Neal v. State*, 80 A.3d 935, 946 (Del. 2013) (quoting *Smith v. Robbins*, 528 U.S. 259, 285 (2000)).

[41] *Id.* at 946.

[42] *Id.* (quoting *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *see generally Strickland*, 466 U.S. 668 (1984).

[43] Def.'s Appeal ¶ 15 (quoting *United States v. Grubbs*, 506 F.3d 4343, 439 (6th Cir. 2007) (quoting *United States v. Arnold*, 486 F.3d 177, 183 (6th Cir. 2007))) (He argues that that "[p]resence alone near a gun . . . does not 'show the requisite knowledge, power or intention to

19. As noted in the Commissioner's Report, the extensive record supports that a reasonable trier of fact could find Defendant guilty of possession.[44] Even considering Defendant's arguments on appeal, while it is true that some courts have ruled that proximity to firearm alone is insufficient proof to establish possession,[45] the facts here are distinguished from Defendant's cited cases.[46]

20. Defendant was the sole occupant and operator of a rental vehicle where contraband was found on his person and a firearm under the passenger seat with a men's jacket and Defendant's identification. The Delaware Supreme Court has held that it is appropriate to presume the custodian of an automobile "to have dominion and control of contraband found in the automobile; and that if . . . such dominion and control may be found to be a conscious dominion and control, the evidence is sufficient to warrant the conclusion of 'possession' as to the custodian."[47]

---

[44] Comm'r Report at 9.

[45] *See United States v. Jenkins*, 90 F.3d 814 (3d Cir. 1996) (reversing defendant's conviction where defendant was at an acquaintance's house where drugs were found, holding a reasonable jury may not infer possession beyond a reasonable doubt from defendant's physical distance from the drugs alone.); *see also Holden v. State*, 305 A.2d 320 (Del. 1973) (overturning defendant's convictions because defendants were only passengers in the vehicle where contraband was found.); *see also Crawley v. State*, 235 A.2d 282 (Del. 1967) (finding that evidence of mere proximity was not enough because defendant was the passenger in a vehicle allegedly containing stolen goods.).

[46] Notably, Defendant's reliance on *United States v. Grubbs* is misplaced, distinguishable, and does not favor Defendant, where the Sixth Circuit Court of Appeals acknowledges that "if a defendant is found with a firearm under the seat of the car he is driving, and he is the lone passenger of the car," less evidence may be required "to infer that he knowingly has the power and intention to exercise dominion and control over the discovered firearm." *United States v. Grubbs*, 506 F.3d 439-40, (6th Cir. 2007).

[47] *Holden*, 305 A.2d at 320; *see generally Jenkins*, 90 F.3d 814; *see generally Crawley*, 235 A.2d 282.

21. As to the claim that counsel should have moved for judgment of acquittal on Drug Dealing, Defendant reasserts that that State's drug expert, Detective Janvier, was unconvincing and that "it is clear that no rational trier of fact could find [Defendant] guilty beyond reasonable doubt of Drug Dealing."[48] This Court echoes the sentiments expressed in the Commissioner's Report as to the logical inferences that could have been drawn by the jury given the record before it.[49]

22. For this reason, trial counsel was not objectively unreasonable when he chose not to file a motion for judgment of acquittal, where there was legally sufficient evidence to justify a conviction.[50] Similarly, appellate counsel was not objectively unreasonable for failing to challenge the sufficiency of the evidence on the facts of this case. In accord with the Commissioner's Report neither motions for judgment of acquittal nor appellate motion for insufficiency of evidence would have been successful.

---

[48] Def.'s Appeal ¶ 24.
[49] Comm'r Report at 10. *See* Evidentiary Hearing Transcript at 31:8-16-32:-2 (Counsel for the State argued that "it would be reasonable for a finder of fact to find that the defendant was aware of the firearm, that the defendant was a drug dealer who possessed cocaine with the intent to deliver it, and that the defendant possessed that firearm which was in arm's reach at the time he also possessed the drugs during the traffic stop . . . .") [hereinafter "Evidentiary Tr."].
[50] Evidentiary Hearing Tr. at 6:23-7:1-8 (Defendant's trial counsel stated, "I elicited information that this was for personal use. I did not feel the Court was going to say that there was no kind of issue for the fact finder. And I did not think – the State's expert witness had testified, in my professional opinion, that this was drug dealing. I did not feel that the motion for judgment of acquittal was going to be successful.").

11

## B. TASC Report

23. Defendant's final argument is that trial counsel's failure to admit evidence of a TASC Report warrants postconviction relief. He argues the report would have demonstrated Defendant possessed the drugs for personal use versus an intent to distribute. He concedes that the statements contained in the TASC Report are hearsay, yet claims they fall under two hearsay exceptions: D.R.E. 803(6) and 807.

24. Defendant argues that the TASC report is a business record under D.R.E. 803(6).[51] He presents no case law to support his argument. Regardless, the report is inadmissible hearsay because it contained Defendant's self-serving inadmissible statement.[52] Defendant elicited the statements made *after* his arrest. His self-serving hearsay statement would not independently qualify as an exception.

25. The admissibility ruling is the same under D.R.E. 807.[53] For a hearsay statement to be held as admissible under this exception, "there [must be] a guaranty of trustworthiness associated with the proffered hearsay statement. . . ."[54] The self-

---

[51] *See* D.R.E. 803(6).

[52] *Demby v. State*, 695 A.2d 1152, 1162 (Del. 1997) ("If double hearsay is being offered into evidence, each aspect must qualify independently as an exception to the hearsay rule[.]"); see also Evidentiary Tr. at 8:9-13,16-21 (Trial counsel stated "I think the TASC Report itself is not admissible. It's hearsay. And I would not be able to . . . get it into evidence. I think I would need a witness to do that." Even as to using the TASC Officer as a witness, he stated "I think that her testimony is also hearsay . . . .").

[53] *See* D.R.E. 807.

[54] *Stigliano v. Anchor Packing Co.*, 2006 WL 3026168, at *1 (Del. Super. Ct. Oct. 18, 2006) (citing *Odaho v. Wright*, 110 S.Ct. 3139, 3147 (1990)); *see Purnell v. State*, 979 A.2d 1102, 1107 (Del.

12

serving statement does not satisfy the guarantee of trustworthiness requirement,[55] and does not qualify as an exception under D.R.E. 807.

26. The TASC Report would not have been admissible under either exception. Therefore, the failure of counsel to attempt to offer any statements contained within cannot form the basis of a viable ineffective assistance of counsel claim.

27. For the foregoing reasons, the Court finds that Defendant fails to meet his burden to demonstrate objective unreasonableness and prejudice as required under *Strickland* and *Neal*, as to both trial and appellate counsel performances.

28. The Court accepts, in whole, the Commissioner's Report and Recommendation.[56] Defendant received effective assistance of counsel at both the trial and appellate stages of his case.

---

2009).

[55] State's Resp. ¶ 13 (citing *Cabrera v. State*, 840 A.2d 1256, 1268 (Del. 2004)) (It is a "[a] self-serving statement given by a defendant who is electing not to testify, with a clear motivation to lie," therefore it "lacks sufficient 'guaranty of trustworthiness' and does not satisfy the necessarily narrow construction of the residual exception.").

[56] *See* DEL. SUPER. CT. CRIM. R. 62(a)(5)(iv) ("A judge may accept, reject, or modify, in whole or in part, the findings of fact or recommendations made by the Commissioner.").

29.    After careful consideration and *de novo* review, the Court **ADOPTS** the Commissioner's Report and Recommendation for the reasons stated above. Defendant's Appeal from the Commissioner's Finding of Fact and Recommendations is **DENIED**.

**IT IS SO ORDERED**.

_____
Vivian L. Medinilla
Judge

oc:    Prothonotary
cc:    Defendant
       Christopher S. Koyste, Esquire
       Department of Justice
       Investigative Services Office